IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2017 NOV 27 PM 12: 05

| | | |
|---|---|---|
| DERIC PORTER #630121 | § § | |
| V. | § § | A-17-CA-415-SS |
| ALESIA GIPSON, MARY CERDA, and STUART JENKINS | § § § | |

## ORDER

Before the Court are Plaintiff Deric Porter's complaint (Document No. 1); Porter's Memorandum of Law (Document No. 2); Porter's Motion for Summary Judgment (Document No. 17); Porter's Opposition to Defendant Alesia Gipson's Sworn Affidavit (Document No. 25); Porter's newly discovered evidence (Document No. 26); Defendant's Motion for Summary Judgment (Document No. 30); Porter's Affidavit for Opposition to Defendant Alesia Gipson's answers and responses to first set of interrogatories (Document No. 31); Porter's Affidavit (Document No. 36); Porter's Response to Defendants' Motion for Summary Judgment (Document No. 39); Porter's supplemental responses (Document Nos. 40-41) and Porter's Motion for Judgment as a Matter of Law (Document No. 42). Porter, proceeding pro se, has been granted leave to proceed in forma pauperis.

1

## STATEMENT OF THE CASE

At the time he filed his civil rights complaint, Porter was confined in the Travis County Correctional Complex. Porter's mandatory supervision was subsequently revoked, and Porter was transferred to a Substance Abuse Treatment Facility where he currently resides

Porter alleges he was released on parole on May 13, 2016. Porter's release plan provided he would reside at his girlfriend's apartment. However, when he arrived at his girlfriend's, he discovered her husband had returned. Porter left and went to the Austin Transitional Center. He was allowed to spend the night but was required to leave the next morning. He then went to the VA Palm Center. He and his caseworker called Porter's parole officer, Alesia Gipson, and notified her of the situation. Gipson directed Porter to seek housing at the ARCH homeless shelter and do a coordinated assessment to see if Porter could qualify for emergency housing. Porter was allowed to stay the night at ARCH but did not qualify for emergency housing.

According to Porter, on June 22, 2016, he informed Gipson he was homeless, living in a dangerous park in the St. John's area and needed halfway house placement. Porter claims Gipson stated she would file the paperwork for Porter to be placed in emergency halfway house placement.

Porter returned to Gipson's office on July 26, 2016. Porter alleges he repeated his request for halfway house placement and informed Gipson he was in constant fear for his life. According to Porter, Gipson told him she would file the paperwork.

Porter alleges he returned to Gipson's office again on August 4, 2016, informing her he needed housing and was living in a very dangerous park. Porter claims, despite his repeated requests, Gipson never completed the paperwork and he was stabbed sometime in October or November 2016 when he attempted to stop a robbery.

Porter sues his parole officer, Alesia Gipson; her supervisor, Mary Cerda; and former Director of the Texas Department of Criminal Justice - Parole Division, Stuart Jenkins. He seeks $2 million in damages.

Both Porter and Defendants move for summary judgment. Porter argues parole officials have a duty to provide immediate halfway house placement if a parolee can no longer live at his approved residence. Porter contends Gipson and Cerda lied when they told him they would file the paperwork for halfway house placement but never did. Due to their deliberate indifference, he maintains he was forced to live in a dangerous park and was brutally stabbed.

Defendants admit Porter met with Gipson on June 22, 2016. At this meeting, Defendants assert Porter informed Gipson he was no longer living at his approved residence with his girlfriend, did not have family residing in Austin, Texas, and was attempting to establish permanent residence with his brother, who lived in Paris, Texas. However, should that fail, Porter may need halfway house placement. Defendants contend Porter did not attempt to find housing in Travis County from the approved housing list. In subsequent visits between Porter and Gipson, Porter allegedly continued to inform Gipson he was still trying to move into his brother's house. Defendants deny Porter ever requested placement in a halfway house.

According to Defendants, a warrant for Porter's arrest was issued on August 12, 2016, because Porter violated several conditions of his mandatory supervision, including failure to appear at a hearing regarding a recent positive test result for use of a controlled substance and Porter absconded from supervision. Porter was subsequently arrested in February 2017, and his mandatory supervision was revoked in September 2017.

Porter repeatedly accuses Gipson of lying at his revocation hearing. Specifically, he states he never told Gipson he was attempting to establish residency with his brother. Porter points out his brother resides in Nevada, not Texas, and Gipson knew this.

## DISCUSSION AND ANALYSIS

I. Legal Standards

    A. Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party makes an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to

defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

B. Section 1983

Section 1983 provides a cause of action to individuals whose federal rights have been violated by those acting under color of state law. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). Section 1983 is not itself a source of substantive rights; rather, it merely provides a method for vindicating federal rights conferred elsewhere. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994). In order to state a claim under Section 1983, a plaintiff must (1) allege a violation of rights guaranteed by the United States Constitution or federal law, and (2) demonstrate the alleged deprivation was committed by a person acting under color of state law. *Doe*, 153 F.3d at 215.

II.  Application

    A.    Eleventh Amendment Immunity

Being sued in their official capacities for monetary damages, Defendants are immune from suit under the Eleventh Amendment because such an action is the same as a suit against the sovereign. *Pennhurst State School Hosp. v. Halderman*, 465 U.S. 89 (1984). The Eleventh Amendment generally divests federal courts of jurisdiction to entertain suits directed against states. *Port Auth. Trans-Hudson v. Feeney*, 495 U.S. 299, 304 (1990). The Eleventh Amendment may not be evaded by suing state agencies or state employees in their official capacity because such an indirect pleading remains in essence a claim upon the state treasury. *Green v. State Bar of Texas*, 27 F.3d 1083, 1087 (5th Cir. 1994).

    B.    Qualified Immunity

Defendants are also protected from Porter's claims brought against them in their individual capacities for monetary damages by the doctrine of qualified immunity. Qualified immunity protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis involves two considerations: "(1) whether facts alleged or shown by plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lytle*

v. *Bexar Cty.*, 560 F.3d 404, 410 (5th Cir. 2009) (quoting *Saucier v. Katz,* 533 U.S. 194, 202 (2001) *overruled in part by Pearson v. Callahan,* 555 U.S. 223 (2009)).

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 233. Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender,* 132 S. Ct. 1235, 1244 (2012) (internal quotation marks omitted).

Though the Court views all facts in the most favorable to Porter on Defendants' motion for summary judgment, the burden remains on Porter "to negate the [qualified immunity] defense once properly raised." *Brumfield v. Hollins,* 551 F.3d 322, 326 (5th Cir. 2008).

Porter has failed to establish a constitutional violation. Alternatively, Porter has not shown he had a clearly established right to a halfway house placement.

The Supreme Court has recognized "that the Due Process Clauses generally confer no affirmative right to governmental aid." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 196 (1989). The Court has, however, recognized an exception where in "certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* at 198. That special relationship exists when the state incarcerates a prisoner, *Estelle v. Gamble,* 429 U.S. 97, 103–04 (1976), or involuntarily commits someone to an institution, *Youngberg v. Romeo,* 457 U.S. 307, 315–16 (1982).

The rationale behind the special-relationship exception is:

> when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*DeShaney*, 489 U.S. at 200. The Fifth Circuit "has followed [*DeShaney's*] language strictly and ha[s] held consistently that only when the state, by its affirmative exercise of power, has custody over an individual *involuntarily or against his will* does a 'special relationship' exist between the individual and the state." *Walton v. Alexander*, 44 F.3d 1297, 1303 (5th Cir. 1995) (en banc) (emphasis in original).

In this case Porter was released on mandatory supervision and was no longer incarcerated. Although his freedom of movement was somewhat restricted while on mandatory supervision, he was not as restricted as that of an incarcerated prisoner. Accordingly, because the limitations imposed by the state were minimal, so too were the duties it assumed. *See DeShaney*, 489 U.S. at 200 ("The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf."). Unlike the parolee in *Jacobs v. Ramirez*, 400 F.3d 105 (2d Cir. 2005) (finding Jacobs had stated a claim under Section 1983 when he alleged the State *compelled* him to live in unsafe conditions), Porter was not *required* to live in an unsafe residence or the park. Rather, Porter absconded from supervision and had not reported to his parole officer for two months when he was stabbed by a third-party non-state actor. Such allegations fail to establish a constitutional violation.

## CONCLUSION

Defendants are protected by the Eleventh Amendment from Porter's claims brought against them in their official capacities for monetary damages and by qualified immunity from Porter's claims brought against them in their individual capacities for monetary damages.

It is therefore **ORDERED** that the Motion for Summary Judgment, filed by Plaintiff Porter on August 11, 2017, is **DENIED**.

It is further **ORDERED** that the Motion for Summary Judgment filed by Defendants Gipson, Cerda, and Jenkins on October 2, 2017, is **GRANTED**.

It is further **ORDERED** that the Motion for Judgment as a Matter of Law, filed by Plaintiff Porter on November 16, 2017, is **DENIED**.

SIGNED this 27th day of November 2017.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE